```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x
                                      :
WILLIAM COLEMAN,                      :
                 Petitioner,          :
                                      :        MEMORANDUM DECISION
        - against -                   :
                                      :        07 Civ. 8261 (DC)
JOSEPH T. SMITH, Superintendent,      :
Shawangunk Correctional Facility,     :
                                      :
                 Respondent.          :
                                      :
- - - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**   WILLIAM COLEMAN
                   Petitioner Pro Se
                   Green Haven Correctional Facility
                   594 Rt. 216
                   Stormville, New York  12582

                   ROBERT T. JOHNSON, ESQ.
                   District Attorney, Bronx County
                   Attorney for Respondent
                        By:  Andrew S. Holland, Esq.
                             Assistant District Attorney
                   198 East 161st Street
                   Bronx, New York  10451

**CHIN, Circuit Judge**

On April 29, 1998, following a jury trial, the Supreme Court of the State of New York, Bronx County, entered judgment convicting petitioner William Coleman of one count of murder in the second degree and two counts of attempted murder in the second degree.  Coleman was sentenced to twenty-five years to life imprisonment on the murder count and twelve and one-half years on each of the two attempted murder counts, all to run concurrently.

On August 28, 2007, proceeding pro se, Coleman petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On July 24, 2009, Coleman filed an amended

petition.  Coleman argues that:  (1) his trial attorney's failure
to call alibi witnesses and present an alibi defense constituted
ineffective assistance of counsel; (2) his appellate attorney's
failure to argue that his trial attorney's failure to object to
purported hearsay testimony constituted ineffective assistance of
counsel; and (3) he was denied his constitutional right to be
present during portions of voir dire.[1]

  For the reasons set forth below, Coleman's petition is
denied.

## STATEMENT OF THE CASE

**A. The Facts**

  On the morning of October 24, 1996, at Taft High School
in the Bronx, Coleman's friends got into an argument over a
bicycle with Yatek Miles.  (Hr'g Ct. Order 1-2).[2]  Later that

_____

[1] Coleman raised his third claim in his Initial Petition
of August 28, 2007 and his Reply Affidavit of December 12, 2010;
he did not raise the claim in his Amended Petition of July 24,
2009.  Nevertheless, as Coleman proceeds pro se, we construe his
petition liberally.  See Johnson v. Fogg, 653 F.2d 750, 753 (2d
Cir. 1981).

[2] References are as follows:  "VD Tr." to the transcript
of voir dire proceedings of October 27, 1997 and November 3,
1997; "Trial Tr." to the trial transcript before the Supreme
Court of the State of New York, Bronx County beginning on October
27, 1997; "Def.-Appellant Br." to the Brief of Defendant-
Appellant to Supreme Court of the State of New York, Appellate
Division, First Department, of August 17, 2000; "C. Grier Aff."
to the Affidavit of Clara Grier of March 20, 2002; "M. Grier
Aff." to the Affidavit of Monique Grier of March 20, 2002; "§
440.10 Mot." to Notice of Motion to Vacate Judgment of Conviction
to the Supreme Court of the State of New York, Bronx County, of
July 24, 2002; "Hr'g Ct. Order" to the decision of the Supreme
Court of the State of New York, Bronx County (Marcus, J.), of
December 20, 2006; "Certificate Den. Leave" to the Certificate
Denying Leave of the Supreme Court of the State of New York,
Appellate Division, First Department, of May 10, 2007; "Initial

day, at approximately 1:35 p.m., Miles and his friends, Larry
Marshall, Kendell Hayes, and Luis Morales, were on the corner of
170th Street and the Grand Concourse.  (Id.).  Coleman and his
friends, including Emmanuel Gullet, were also present.  (Id.).
After a brief exchange, Miles punched Gullet in the head.  (Id.).
Coleman then drew a gun and fired at Miles and his friends,
shooting Miles in the chest, Morales in the leg, and Hayes in the
back of the leg.  (Id.).  Morales fell to the ground; Coleman,
standing above him, continued to shoot him.  (Id.).  Coleman then
fled as Morales died.  (Id.).  Marshall and Hayes witnessed the
shooting.  (Id.).

**B.    Prior Proceedings**

**1.    Indictment and Jury Voir Dire**

On November 6, 1996, in connection with the shootings,
Coleman was indicted for:  one count of murder in the second
degree; two counts of attempted murder in the second degree; and
two counts of assault in the second degree.  (Def.-Appellant Br.
2).  Trial commenced on October 27, 1997.  (Id.).  Coleman was
represented by Martin Albert.  (Amen. Pet. 4).

During voir dire, Coleman attended several conferences
with the judge, prospective jurors, and counsel for both sides,

---

Pet." to the Petition for Writ of Habeas Corpus, Pursuant to 28
U.S.C. § 2254 of August 28, 2007; "Pet'r Ltr." to Petitioner's
Letter to Stay the Petition of January 11, 2008 (entered January
30, 2008); "Amen. Pet." to the Amended Petition for Writ of
Habeas Corpus, Pursuant to 28 U.S.C. § 2254 of July 24, 2009;
"Decl. in Opp'n to Pet." to the Declaration in Opposition to
Petition for Habeas Corpus of September 24, 2010; "Reply Aff." to
the Reply Affidavit in Support of Petition for Habeas Corpus of
December 2, 2010.

and he participated in Albert's challenges to potential jurors.
(VD Tr. 27-65, 90-91, 127-32, 214-31, 274-81).  Coleman was,
however, absent from some sidebar conferences.  (<u>Id.</u> at 66, 88-
90, 141-45, 188, 281).  On October 29, 1997, during voir dire,
the judge called both parties to the bench to discuss a juror.
(<u>Id.</u> at 88-91).  Albert stated that he was waiving Coleman's
presence at the sidebar conference.  (<u>Id.</u> at 88).  Coleman did
not object.  (<u>Id.</u>).  During the conference, Coleman conferred
with Albert, the court called him to join Albert at sidebar, and
Coleman consented to dismissing the juror.  (<u>Id.</u> at 90-91).

    2.  **<u>Evidence at Trial</u>**

      The prosecution's evidence at trial included several
witnesses.  First, Marshall and Hayes testified as witnesses to
the shooting; they both identified Coleman as the shooter.
(Trial Tr. 199; 295-98).  Second, a ballistics and firearms
expert, Anthony Tota, corroborated Marshall and Hayes's
testimony, establishing that, <u>inter alia</u>, a single gun was used
in the shooting (<u>id.</u> at 460-61), and the shots that killed
Morales were fired from directly over Morales's body (<u>id.</u> at 464-
66, 472-74).

      Third, Police Officer Daniel Rivera testified that a
few minutes after the shooting, he arrived at Andre Grier's
apartment, which was approximately a block and a half from the
shooting.  (<u>Id.</u> at 404-07).  Rivera explained that Coleman was at
the apartment and he was "very sweaty" and "[h]is heart was
beating very rapidly."  (<u>Id.</u>).  Rivera was prepared to further

-4-

testify that when he arrived at the apartment, Clara Grier, Andre's mother, stated:  "My son's two friends just got here and I want nothing to do with it."  (Hr'g Ct. Order 12).  Albert objected to the testimony as hearsay, however, and Rivera was not permitted to disclose it.  (See Trial Tr. 402-03).

Finally, Detective O'Brien, the lead investigator in the case, also testified for the prosecution.  (Id. at 503-61). O'Brien explained that on October 24, 1996, the day of the shooting, he showed a photograph of Coleman to two individuals who did not testify at trial:  Abuki Peterson and Chase Gullet. (Id. at 514-15).  The prosecution asked O'Brien if, after meeting with Peterson and Gullet, he was "looking to make an apprehension."  (Id. at 515).  O'Brien stated that he was looking to arrest Coleman as the lone suspect in the shooting.  (Id.).

For the defense, Andre Grier testified that he and Coleman had been together on the day of the shooting.  (Id. at 575-76).  Andre stated that Coleman accompanied him to a McDonald's restaurant so that Andre could apply for a job; afterwards, they returned to Andre's apartment to lift weights. (Id.).  A third male, Jayson Wilson, was also present in Andre's apartment.  (Id. at 572-73).  When the police arrived at the apartment, they asked Andre, Coleman, and Wilson to step into the hallway to talk; meanwhile, other officers searched Andre's bedroom.  (Id.).  Andre stated that although he was friends with Coleman, he would not lie on the witness stand to protect him. (Id. at 576-77).

3.    **Appeal**

On August 17, 2000, Coleman, represented by Alexei
Schacht, filed an appeal with the Appellate Division, First
Department.  On May 24, 2001, the Appellate Division unanimously
affirmed Coleman's conviction.  People v. Coleman, 724 N.Y.S.2d
856 (1st Dep't 2001).  On August 24, 2001, Judge Richard C.
Wesley of the New York Court of Appeals denied Coleman leave to
appeal.  People v. Coleman, 96 N.Y.2d 917 (2001).

4.    **Section 440.10 Motion and Hearing**

On July 24, 2002, Coleman, proceeding pro se, moved to
vacate his judgment of conviction pursuant to N.Y. Crim. Proc.
Law § 440.10.  In support of his motion, Coleman submitted sworn
affidavits from Monique and Clara Grier.  (M. Grier Aff.; C.
Grier Aff.).  The affidavits corroborated Andre Grier's testimony
and suggested that Coleman was present in the Griers' apartment
during the shooting.  (C. Grier Aff. ¶¶ 4, 5, 11; M. Grier Aff.
¶¶ 4-6).  The affidavits also stated that Monique and Clara were
never contacted by Albert to testify at trial.  (C. Grier Aff. ¶¶
12-13; M. Grier Aff. ¶¶ 12-13).

On December 5, 2003, without holding a hearing, the
Supreme Court, Bronx County, denied Coleman's § 440.10 motion to
vacate his judgment.  See People v. Coleman, 781 N.Y.S.2d 510,
510 (1st Dep't 2004).  On September 2, 2004, the Appellate
Division vacated the denial of Coleman's § 440.10 motion and
remanded for a hearing and decision.  Id.

-6-

Over three days in February, March, and August 2006, the Supreme Court, Bronx County, held an evidentiary hearing. (Hr'g Ct. Order 1).  At the hearing, Coleman, represented by Robert Boyle, argued that Albert provided ineffective assistance of counsel at trial by:  (1) failing to call Clara, Monique, or Nicole Grier as alibi witnesses when their testimony would exonerate him (id. at 7);[3] and (2) not objecting to the admission of O'Brien's testimony, which purportedly suggested that two non-testifying individuals had identified Coleman as the shooter (id. at 26-27).

Coleman, his wife Janika Coleman, and Monique Grier testified on Coleman's behalf.[4]  (Id. at 7-10).  Monique testified that when she signed the affidavit, nearly five and a half years after the shooting, her recollection was fresh, and she believed her statements to be true.  (Id. at 8).  She further testified, however, that she now had no recollection of the day of the shooting, and could not remember details even after reviewing her affidavit.  (Id.).  Given Monique's inability to

---

[3]    Coleman subsequently withdrew his claim with respect to Clara and abandoned his claim with respect to Nicole.  (Hr'g Ct. Order 7).

[4]    The prosecution submitted an affidavit from Albert in which he stated that Coleman never informed him that Monique, Nicole and Clara Grier were available to testify at trial as alibi witnesses.  Albert stated that, after the verdict, Janika Coleman told Albert that she had witnesses, but she never provided him with names or contact information.  By the time of the hearing, Albert had passed away.  (Hr'g Ct. Order 5, 12, n.6).

verify the information in her affidavit, the court denied its
admission into evidence.  (Id. at 17, 22).

       With respect to Coleman's alibi-related claim, the
court held, inter alia, that it was not unreasonable for Albert
to decline to call Monique to testify at trial because of her
questionable credibility and because of Clara's inconsistent --
and "potentially inculpatory" -- statement to Rivera on the day
of the shooting.  (Id. at 23-25).  With respect to Coleman's
hearsay-related claim, the court found that this claim was
procedurally barred because it was not raised on appeal.  (Id. at
26).  The court also dismissed the claim for lack of merit,
finding that the testimony was not hearsay because it was offered
to explain the investigation.  (Id. at 27-30 (citing People v.
Ruis, 784 N.Y.S.2d 558 (2d Dep't 2004))).  Accordingly, on
December 20, 2006, the court denied Coleman's § 440.10 motion to
vacate his conviction.  (Id. at 34).  On May 10, 2007, Judge
Eugene L. Nardelli of the Appellate Division denied Coleman leave
to appeal.  (Certificate Den. Leave).

    **5.**  **Coleman's Habeas Corpus Petition**

       On August 28, 2007, Coleman, proceeding pro se,
petitioned this Court for a writ of habeas corpus pursuant to 28
U.S.C. § 2254.  Coleman argued that:  (1) his trial attorney
provided ineffective assistance of counsel by failing to call
available alibi witnesses and present an alibi defense; (2) his
appellate attorney provided ineffective assistance of counsel by
failing to argue that the trial attorney's failure to object to

-8-

purported hearsay testimony constituted ineffective assistance of counsel; and (3) he was denied his constitutional right to be present during all material stages of trial when his attorney waived his right to attend sidebar conferences during jury voir dire.  (See Initial Pet.; Amend. Pet.).

On January 11, 2008, Coleman requested that this Court stay his petition while he exhausted a motion for a writ of error coram nobis in state court.  (Pet'r Ltr.).  On February 14, 2008, this Court granted the stay.  (Order., ECF Doc. No. 3, Coleman v. Smith, No. 07 Civ. 8261 (S.D.N.Y. Feb. 14, 2008)).  On January 13, 2009, the Appellate Division denied Coleman's motion for a writ of error coram nobis.  People v. Coleman, No. M-3905, (1st Dep't Jan. 13, 2009) (2009 N.Y. Slip. Op. 60625(U)).

On July 24, 2009, Coleman filed an amended petition for habeas relief.  On November 2, 2011, the state submitted the trial transcript to this Court.

## DISCUSSION

### I.   Federal Review of State Convictions

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d); see Harrington v. Richter, --- U.S. ---, 131 S.Ct. 770, 786 (2011).  "In this context, clearly established law

signifies the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." Howes v. Fields, No. 10-680, 2012 WL 538280, at *5 (U.S. Feb. 21, 2012) (internal quotation marks omitted).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . no possibility for fairminded disagreement." Vega v. Walsh, No. 10-2540-pr, 2012 WL 516203, at *2 (2d Cir. Feb. 17, 2012) (per curiam) (quoting Richter, 131 S.Ct. at 786-87); see also Wetzel v. Lambert, No. 11-38, 2012 WL 538281, at *2 (U.S. Feb. 21, 2012).

## II.  Coleman's Claims

### A.   Ineffective Assistance of Counsel at Trial

#### 1.   Applicable Law

To prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, he "must show that counsel's performance was deficient" -- that is, he must show that his attorney's performance fell below an objective standard of professional reasonableness.  Id. at 686-89.  A court's review of attorney performance is "highly deferential," evaluating the conduct from "counsel's perspective at the time" and "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" or that the "challenged action might be considered sound trial strategy."  Id. (internal quotation marks omitted).

-10-

Second, the petitioner "must show that the deficient performance prejudiced the defense" -- that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

## 2.  **Application**

Coleman claims that he informed Albert that, in addition to Andre Grier, Monique, Nicole, and Clara Grier were willing to testify that he was in the Griers' apartment at the time of the shooting.  (Amen. Pet. 6-7).  Coleman argues that Albert's failure to call alibi witnesses and present an alibi defense constituted ineffective assistance of counsel in violation of the Sixth Amendment.  (Id. at 4-9).

Coleman's claim of ineffective assistance at trial fails under Strickland because there is no evidence to show that Albert's performance was deficient.  See Strickland, 466 U.S. at 686.  Monique and Clara's affidavits suggesting they could serve as alibi witnesses did not surface until Coleman filed his § 440.10 motion several years after trial.  (See M. Grier Aff.; C. Grier Aff.).  Nicole never even submitted an affidavit, and, at his § 440.10 hearing, Coleman abandoned his claim with respect to Nicole.  (Hr'g Ct. Order 7).  Additionally, Clara initially told police that Coleman was not in her apartment when the shooting occurred.  (Hr'g Ct. Order 12-13).  While Clara's statement was not admitted at trial (Trial Tr. 402-03), the prosecution could

have introduced the statement for impeachment purposes if Albert had called Clara as an alibi witness.  Further, according to Coleman's amended petition, Andre's testimony was not well-received by the jury; Andre appeared "frustrated," "contentious," and "argumentative" on the stand, his "credibility was . . . questionable," and his testimony discredited.  (Amen. Pet. 8). Thus, even if Monique, Nicole, and Clara were willing and able to testify at the time of trial, it would have been reasonable for Albert to decide that additional alibi witnesses, if discredited, could adversely affect Coleman's defense, including his claim of misidentification.  Albert's decision not to pursue an alibi defense, therefore, does not fall "below an objective standard of reasonableness under prevailing professional norms."  See Strickland, 466 U.S. at 686-89.

Additionally, even assuming deficient performance, there is no reasonable probability that, but for Albert's alleged unprofessional errors, the result would have been different.  See id. at 687, 694.  The jury did not credit Andre's testimony and there was substantial evidence to convict Coleman, including the testimony of two eye-witnesses and a ballistics and firearms expert.  Accordingly, Coleman's claim of ineffective assistance of counsel at trial fails.

**B.**    **Ineffective Assistance of Counsel on Appeal**

    **1.**    **Applicable Law**

Strickland's two-part test extends to attorneys on appeal.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

First, to establish <u>Strickland</u>'s deficient performance by an
attorney on appeal, it is not sufficient to suggest that counsel
did not advance a nonfrivolous argument because attorneys are not
required to raise all possible arguments on appeal.  <u>Id.</u>  Indeed,
one of the hallmarks of effective appellate advocacy is the
"importance of . . . selecting the most promising issues for
review."  <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983).  Failure to
raise an issue on appeal constitutes ineffective assistance only
when "counsel omitted significant and obvious issues while
pursuing issues that were clearly and significantly weaker."
<u>Mayo</u>, 13 F.3d at 533.  Second, to establish <u>Strickland</u> prejudice
at the appellate level, a petitioner must prove that there is a
reasonable probability that the omitted claim "would have been
successful before the state's highest court."  <u>Mayo</u>, 13 F.3d at
534 (quoting <u>Claudio v. Scully</u>, 982 F.2d 798, 803 (2d Cir.
1992)).

        2.  **Application**

        Coleman claims that his attorney on appeal, Alexei
Schacht, provided ineffective assistance of counsel by declining
to argue that Albert provided ineffective assistance of counsel
at trial by failing to object to O'Brien's purportedly hearsay
testimony.

        Coleman's claim fails under <u>Strickland</u>'s first prong
because there is no indication of Schacht's deficient
performance.  <u>See Strickland</u>, 466 U.S. at 686-69.  On appeal,
Schacht diligently raised four arguments to reverse Coleman's

-13-

conviction.[5]  He was not obligated to raise all plausible

arguments on Coleman's behalf.  See Mayo, 13 F.3d at 533.

In addition, the argument in question that Schacht did

not raise -- that Albert's failure to object to O'Brien's

purportedly hearsay testimony constituted ineffective assistance

of counsel -- was not "clearly and significantly" stronger than

the issues Schacht raised on appeal, see id., because O'Brien's

testimony was not, in fact, hearsay, see United States v.

Stewart, 433 F.3d 273, 291 (2d Cir. 2006).  Hearsay is defined as

"a statement, other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to prove

the truth of the matter asserted."  Fed. R. Evid. 801(c).

Although the admission of a hearsay statement may violate a

defendant's Confrontation Clause rights, the Confrontation Clause

"does not bar the use of testimonial statements for purposes

other than establishing the truth of the matter asserted."

Crawford v. Washington, 541 U.S. 36, 59, 61 & n.9 (2004).

Out-of-court statements not offered for the truth of the matter

asserted may be admissible as background evidence to "furnish an

explanation of the understanding or intent with which certain

---

[5]      On appeal, Schacht argued violations of Coleman's: (1)
right to be present during all material stages of the
proceedings; (2) right to a fair trial by (a) the court's
mischaracterization of the defendant's theory of the case and (b)
its giving the jury a "no adverse inference" charge that was not
requested by the defendant; and (3) right to the effective
assistance of counsel by defense counsel's failure to seek an
alibi jury charge.  He also argued that Coleman's sentence was
excessive and should be reduced in the interests of justice.
(See Def.-Appellant Br.).

acts were performed." United States v. Reifler, 446 F.3d 65, 92 (2d Cir. 2006) (internal quotation marks omitted); see also Stewart, 433 F.3d at 291 (citing Crawford, 541 U.S. at 59 n.9. Here, O'Brien's testimony was not hearsay because he was providing background information to explain the sequence of his investigation.  (See Trial Tr. 514-15).  He did not repeat any statements made to him by Peterson or Gullet, and no hearsay statements were offered to show that Coleman was identified as the shooter.  (See id.).  Thus, Schacht's performance was not deficient because the hearsay-related claim was not "clearly and significantly" stronger than the issues Schacht decided to pursue on appeal.  See Mayo, 13 F.3d at 533.

Further, under Strickland's second prong, for the reasons stated above, even if there had been deficient performance, there is no reasonable probability that Coleman's hearsay-related ineffective assistance claim, if raised, would have prevailed on appeal.  See id. at 534.  Schacht's choice not to include the claim, therefore, did not prejudice the outcome of Coleman's appeal.  Accordingly, Coleman's claim fails.

C.   **Right to be Present During Voir Dire**

1.   **Applicable Law**

To be valid, a defendant's waiver of his right to be present at all stages of trial must be "knowing and voluntary." United States v. Fontanez, 878 F.2d 33, 36 (2d Cir. 1989).  A defendant may implicitly waive his right to be present by failing to assert it.  Cardinal v. Gorczyk, 81 F.3d 18, 20 (2d Cir.

-15-

1996).  The Second Circuit has held that a criminal defendant's failure to invoke his right to be present at a conference that he knows is taking place or at voir dire can constitute a valid waiver of that right.  See United States v. Gagnon, 470 U.S. 522, 529 (1985) (conference); Cardinal, 81 F.3d at 20 (voir dire).

      **2.  Application**

      Coleman argues that his due process rights were violated when Albert waived his right to attend sidebar conferences during jury voir dire.  Coleman's claim fails, however, because, as the Appellate Division found, his conduct constituted a valid waiver of his right to attend sidebar discussions.  Coleman, 724 N.Y.S.2d at 856.

      Under similar circumstances, in Cardinal, the defendant, "[having been] aware of his right to see and to hear the voir dire proceedings[,] . . . nevertheless chose to comply with his attorney's suggestion and returned to his seat without objection."  Cardinal, 81 F.3d at 20.  The Second Circuit held that the defendant waived his right to attend individual voir dire proceedings at the bench, and that the "trial judge did not purposefully exclude [the defendant] from the selection proceeding and had no reason to suppose that [the defendant] was unable to see or hear whatever he wanted to see or hear."  Id.

      Here, when Albert went to the bench for sidebar discussions, Coleman, who had previously attended conferences and sidebars, neither sought to join the discussion nor objected to its occurrence.  See Coleman, 724 N.Y.S.2d at 856.  Furthermore,

-16-

at sidebar, Albert affirmatively waived Coleman's right to attend future discussions, stating that he was "waiving [Coleman's] standing up here." (VD Tr. 88). The trial judge replied, "All right. He is right behind you anyway." (VD Tr. 88). As the Appellate Division found, "[t]he record establishes a valid waiver of [Coleman's] right to be present at certain sidebar conferences with prospective jurors. The waiver was stated by counsel in [Coleman's] presence and after [Coleman] had exercised his right to be present at previous sidebars." Coleman, 724 N.Y.S.2d at 856 (internal quotation marks omitted). Accordingly, Coleman's claim fails.

**CONCLUSION**

Coleman has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his habeas petition is dismissed. Additionally, I decline to issue a certificate of appealability because Coleman has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated:     New York, New York
           March 7, 2012

                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting By Designation

-17-
